### WALKER et al. v. MIRE et al.
### No. 2131.

Court of Appeal of Louisiana. First Circuit.

Oct. 3, 1940.

Argued before DORE and OTT, JJ., and J. OLIVER BOUANCHAUD, Judge ad hoc.

Blum & LeBlanc, of Donaldsonville, for appellant.

Fred G. Benton, of Baton Rouge, for appellee.

BOUANCHAUD, Judge ad hoc.

This suit is the outgrowth of an unfortunate accident that occurred on May 18, 1929, when one of the plaintiffs, Mrs. R. F. Walker, was struck by an automobile traveling west on North Boulevard, owned by one of the defendants, Victor P. Mire, and at the time driven and operated by his co-defendant, Linden Gautreaux, who was operating said automobile for defendant, Mire, while Mrs. Walker was in the act of crossing North Boulevard at a point some thirty feet west of the southwest corner of the intersection of Third Street and North Boulevard in the city of Baton Rouge, Louisiana.

From the record we are satisfied that the point of contact was about in the center of the north lane of traffic on North Boulevard approximately thirty (30) or thirty-five (35) feet west of the southwest intersection of Third Street and North Boulevard.

As a result of the accident, we are convinced Mrs. Walker suffered severe injuries and that plaintiff, Mr. R. F. Walker, suffered damages of approximately one thousand ($1,000) dollars, covering medical and hospital expenses incurred by him in the care of his wife, but it will serve no useful purpose to go into the details of the injuries and damages in view of the conclusions we have reached as to liability in their case.

The plaintiffs allege that the accident was caused solely by the negligence of the defendant, Gautreaux, in driving and operating the Mire automobile at a rate of speed of thirty (30) or forty (40) miles per hour through a red light at the southwest intersection of Third Street and North Boulevard, in disregard of pedestrians, and they seek to recover from the defendants the sum of fifteen thousand ($15,000) dollars on behalf of Mrs. Walker for her personal injuries, and the sum of one thousand ($1,000) dollars on behalf of Mr. Walker.

On the other hand the defendants deny that they were traveling at an excessive rate of speed or that they ran through a red light, but to the contrary averred that when they reached the intersection of Third Street and North Boulevard, they stopped their automobile at the red light behind another automobile, and that after the light had turned green, the automobile immediately ahead of them turned north into Third Street, and they proceeded to cross Third Street at a low rate of speed and continued west along North Boulevard, and were traveling in second gear, at a rate of speed of approximately ten or twelve miles per hour, when Mrs. Walker, with an um-

brella over her head, tilted east, which prevented her from seeing on-coming traffic from that direction, suddenly stepped into their lane of traffic from between automobiles parked on the north curb of North Boulevard, some thirty (30) or thirty-five (35) feet west of the Third Street intersection, and that in spite of all the care exercised by the driver, Gautreaux, under the circumstances, such as cutting his car to the left, and immediately applying his brakes and bringing the car to a complete stop within ten or twelve feet, Mrs. Walker was bumped by the right fender of the automobile. Further, that the defendants were guilty of no negligence, and were in no wise at fault, but that the sole proximate cause of the accident was the negligence of Mrs. Walker.

This case was tried before Judge George K. Favrot on February 5, 1931, who died before rendering a decision. Thereafter one of the attorneys who represented the plaintiffs, and one of the attorneys who represented the defendants also died. It appears further that the transcript of testimony heard on the trial of the case was lost or misplaced and was not filed until October 2, 1935, and thereafter one of the defendants, Gautreaux, died, and no effort has been made to substitute any one in his stead. The case was finally submitted to Judge Womack on briefs for his decision on the face of the record made up at the trial before Judge Favrot, and he has rendered judgment against the defendant, Mire, and in favor of plaintiff, Mrs. R. F. Walker, in the sum of two thousand ($2,000) dollars, and in favor of plaintiff, R. F. Walker, in the sum of one thousand ($1,000) dollars.

Defendant Mire has appealed, and plaintiffs have answered the appeal asking that the amount awarded to Mrs. Walker be increased from two thousand ($2,000) dollars to fifteen thousand ($15,000) dollars, as originally prayed for in their petition.

The above history is given for the purpose of explaining the long delay in reaching a judgment in this case.

We are convinced that Mrs. Walker was struck by defendant's automobile, and that she suffered severe injuries and if there is any liability at all on the part of the defendants, the judgment of the District Court is modest rather than excessive. Therefore, the only serious question presented, and with which we are concerned, is the question of liability on the part of the defendant.

In seeking to establish the liability of the defendants, plaintiffs rely on the testimony of Mrs. R. F. Walker and Ernestine Campbell, a colored insurance collector and former school teacher; King H. Strenzke, then Chief of Police of the City of Baton Rouge; and Joseph Gonzales, then mayor of the Town of Gonzales, in the Parish of Ascension, Louisiana.

At the outset it must be said to Mrs. Walker's credit that in spite of her natural self-interest in the outcome of this litigation, she testified in a straightforward manner and gave the facts just as she remembered them. However, her testimony is not favorable to plaintiffs' theory of the case. Mrs. Walker testified that at the time of the accident she was going to the Old State Capitol. That immediately prior to the accident she walked south down the west side of Third Street, and upon reaching North Boulevard turned right and proceeded down the north side of North Boulevard a distance of about thirty (30) or thirty-five (35) feet west of Third Street, at which point she stopped and looked east on North Boulevard at the traffic light at the southwest corner of Third Street and North Boulevard, and seeing that the light was against traffic traveling west on North Boulevard, she stepped down from the sidewalk and proceeded to cross North Boulevard, and after she had gone halfway into the street, she was struck by defendant's car and knocked unconscious. She admits that at the time it was raining and that she had her umbrella over her head tilted to the east to protect her from the rain, which prevented her from seeing automobiles coming from that direction. She does not recall whether or not there were any cars parked on the north curb of North Boulevard, but she will not deny that automobiles were so parked. As her testimony has an important bearing on the out-come of this suit, we think it best to quote briefly from the most pertinent parts.

On direct examination she gave this statement as to how the accident happened (Tr. 4):

"Q. Just state to the Court how this happened? A. I was going down Third Street, going to the State House, and I crossed just at that middle crossing at Stroube's Drug Store, as you turn that corner, and the green light was on Third

Street and the red light was on North Boulevard, and I started across. It was raining, and I had my umbrella up. I did not see any cars, and I just went on across."

On the question of whether she observed the traffic before attempting to cross the street, she testified as follows (Tr. 11):

"Q. How was your attention directed to any automobile that was traveling on the street—or was it attracted? A. It was not attracted to any.

"Q. When did you acquire your first knowledge that an automobile was traveling in the direction toward the river? A. I did not have any knowledge of it at all.

"Q. You had no knowledge of it whatever? A. No.

"Q. And you did not look up or down that street before you undertook to cross it? A. No, I did not.

"Q. You simply went directly across the street? A. I went by that light."

As to the fact that her umbrella obstructed her view, on cross-examination she testified as follows (Tr. 11, 12):

"Q. You say you had an umbrella over you at the time? A. Yes.

"Q. You don't remember how you were holding that umbrella? A. It was raining, and the rain was coming from this direction (indicating). I imagine I must have had it tilted, but I don't know that.

"Q. You don't know whether you had it tilted toward the front or the back? A. The rain was coming from this direction (indicating). I imagine I had it tilted this way.

"Q. That would be toward the street? A. East. I had it tilted east."

"Q. In other words, your umbrella was tilted toward the same direction that the traffic light was? A. Yes."

On the question of a guy wire obstructing her passage from the side walk to the Street, Mrs. Walker testified as follows (Tr. 8, 9):

"Q. It is not a fact that at this particular point where you crossed the street there is either a telephone, telegraph, or power line pole with a guy line wire leading from the pole down to the sidewalk where you crossed the street? A. Yes, I think I saw one there.

"Q. There is one there? A. Yes.

"Q. In order to cross that street at that particular point, was it not necessary, then, for you to pass under that guy line wire, or around it, in order to get into the street itself? A. I guess I must have gone around it or under it. I don't know whether I went under it or around it."

It will be seen that by Mrs. Walker's own testimony, she failed to make the necessary and prudent observations, which were required of her in crossing North Boulevard in the middle of the block.

The strongest testimony in support of plaintiff's case is that of the colored insurance collector and former school teacher, Ernestine Campbell, who according to her own testimony came into the case quite accidently, to say the least.

She testified that a Mr. Lee, accompanied by another gentleman, came over to her home the day after the accident to see her mother relative to a real estate transaction, and while there in her presence discussed the accident, whereupon she stated she had seen it, and Mr. Lee thereafter informed Mr. Walker that she, Ernestine Campbell, had witnessed the accident, and she was called upon to testify in the case. After stating that she had no interest whatsoever in the outcome of the suit, she testified that she was walking westward on North Boulevard towards Third Street for the purpose of going to the Louisiana National Bank situated on the east side of Third Street, which did not require her to cross Third Street, and that as a matter of habit when she arrived within a few feet of the corner of Third Street she looked up at the traffic light at the intersection of Third Street and North Boulevard, situated on the opposite side of Third Street from where she was, and noticed that it was red for traffic on North Boulevard, and just at that time defendant's car drove on through the red light and that "I said to myself—I often express myself—they didn't pay any attention to the red light", and that by the time she had said this to herself, the car struck Mrs. Walker. She further testified she stood there for a few minutes and feeling that the lady was dead and not wanting to see her (implying that she was afraid of the dead), she thereupon turned north on Third Street and went to the Louisiana National Bank.

She also testified that the caution bell was ringing at the time defendant's automobile struck Mrs. Walker, who was then in the middle of the street crossing to the neutral ground, and that only one car, the defendant's, passed the red light going "maybe twenty or twenty-five miles per

hour". She does not recall if there were any cars parked on the north curb of North Boulevard, but is positive there were no parked cars that obstructed her view of Mrs. Walker.

Chief of Police King H. Strenzke, who was called as a witness in behalf of the plaintiffs, testified that when the accident occurred he was having coffee in the Orange Delight Stand at the southeast corner of Third Street and North Boulevard. That he heard the blow when Mrs. Walker was struck and immediately went over to the scene of the accident, and with the assistance of the defendants, placed Mrs. Walker in defendant's automobile and took her to the hospital. He testified that defendant's car could not have been traveling fast since it stopped on a wet pavement within ten or twelve feet of the point of impact. And that Mrs. Walker was attempting to cross North Boulevard to the neutral ground from a point some thirty-five (35) feet east of the intersection of Third Street and North Boulevard, and that while he did not know whether this was an official crossing place, people often cross there, and he did not consider that a pedestrian was violating the traffic rules of Baton Rouge by so crossing at that point. He explained the traffic light system, but was unable to say how long was the caution period, but upon being pressed estimated that it was about thirty seconds. He further stated that from his observation of the physical facts, which he viewed immediately after the accident, that it appeared to him Mrs. Walker had passed between automobiles parked at the north curb of North Boulevard, and when struck was carrying an umbrella, which he found on the ground. That from an investigation made by the police at the scene of the accident, no witnesses were found who would testify that defendant's automobile had ran the red light, and that the police were unable to discover any other facts from their investigation which would warrant the filing of any charges, and he so informed Mr. Mire, who called at the police station the night of the accident.

The testimony of Mr. Gonzales, who was the last witness for the plaintiffs, was introduced solely for the purpose of trying to show that the driver of the automobile, Gautreaux, had the reputation of being a careless and negligent driver. However, all Mr. Gonzales could testify to was that he knew that Gautreaux had been in one other accident and this, coupled with the fact that Mr. Gonzales admitted that he had on numerous occasions employed Gautreaux to drive his automobile, renders his testimony of little value, if any.

The testimony of the defendants and their witness Philip Brocata was to the effect that at the request of Mr. Mire, Gautreaux drove Mire and his son and Mr. Breaux from Gonzales to Baton Rouge, Louisiana, where Mire wanted to engage the services of a ball player by the name of Tiger Denny, who operated a fruit stand near the Y. & M. V. Depot at the foot of North Boulevard. That upon arriving in Baton Rouge, they picked up Philip Brocata, who assisted Mire in securing the ball players for his team, to direct them to Tiger Denny's place of business. That with Gautreaux driving, Brocata sitting on the front seat, and Mire, and his young son, and a Mr. Breaux sitting on the rear seat, they proceeded west on North Boulevard traveling slowly in a drizzling rain with the windows of the car up. That when they arrived near the intersection of Third Street there was another automobile in front of them traveling in the same direction. That both cars stopped for the red light, and when the light turned green, the car ahead of them proceeded and turned right into Third Street, and they continued westward on North Boulevard and had reached a point about thirty (30) or thirty-five (35) feet west of Third Street traveling in second gear, at a rate of speed of about ten miles per hour, when Mrs. Walker suddenly stepped out from between automobiles parked on the north curb of North Boulevard and into their lane of traffic, whereupon Gautreaux immediately cut to the left and applied his brakes in an attempt to avoid striking Mrs. Walker, but that they did not have sufficient time. Brocata stated that Mrs. Walker was only four feet distant when he first observed her. They testified that the car only traveled ten (10) or twelve (12) feet after the brakes were applied. Mr. Breaux did not testify as it was stated by one of the witnesses that he was in New Orleans on the date of the trial, nor did Mr. Mire's young son testify as the evidence showed that he was confined in bed with pneumonia.

It may be possible in some instances to reconcile the testimony of Mrs. Walker to that of the defendants' witnesses, but it is clear that the testimony of Ernestine Campbell is in complete contradiction with all

of the defense testimony as well as with a part of Strenzke's testimony, who testified for the plaintiffs.

Mrs. Walker admits she did not look at the light subsequent to reaching the sidewalk, and while it is apparently her testimony that she looked at the light and saw that it was red immediately before stepping off the sidewalk, it is probable that she lost a few seconds after looking at the light before she either went under or around the guy wire, and a few seconds before she picked her place between the parked automobiles whereon she stepped from the sidewalk and, of course, it took her a second or two to negotiate the distance between the parked cars to the cleared street, and another second or two in making the two or three steps which she made before being struck. In other words, it is entirely probable that enough time elapsed from the moment she looked at the light to the time she reached the point where she was struck to permit the light to turn green and the defendants to reach that point at the same time she did. Of course, this could hardly be true if we were to accept Mr. Strenzke's estimate of the caution period, which he estimated at thirty seconds, but he frankly admitted he could not testify as to how long this caution period was, and it is difficult to believe that his estimate is correct, since a caution period of thirty seconds would be very unusual. It is not clear, but it is more likely that Mr. Strenzke meant that thirty seconds elapsed for a complete change of signals, and that as is customary the warning signal, including the bell, was just a matter of three or four seconds, with the remaining twenty-six or twenty-seven seconds of the thirty second period being devoted to either the green or red light.

In our opinion Ernestine Campbell tells a story that is hard to believe. It does not seem likely that while walking in the rain intent upon going to the Louisiana National Bank around the corner on Third Street she should have noticed the light barring traffic across Third Street, and that she should have noticed the car to her left, and Mrs. Walker walking across North Boulevard a distance of some sixty feet from where she stood. She had no interest in the light except idle curiosity, as she admitted that she had no intention of cross-

ing Third Street or North Boulevard, and it is unlikely too that having seen Mrs. Walker struck by the car, she should have just stood there for a few minutes in the rain on the corner of Third Street and North Boulevard, and then have gone about her business without comment or inquiry. It will be noted too that although she was able to observe so many of the details surrounding the accident, yet she could not state positively whether or not there were cars parked on the north curb of North Boulevard, though in effect she contradicted the testimony of Chief Strenzke and the defense witnesses who stated there were cars so parked, by stating that no cars were between her vision and Mrs. Walker.

It has been established to our satisfaction that cars were so parked along the north curb of North Boulevard, and that being true, we feel that the witness, Ernestine Campbell's, vision was obstructed.

■ For the reasons above, we can not accept the testimony of Ernestine Campbell, and that being true we feel that the preponderance of the evidence is to the effect that the defendants did not run the red light, and were not guilty of any other negligence, and that the proximate cause of the accident was Mrs. Walker's negligence in attempting to cross a traffic lane from between parked cars away from the intersection without having made sufficient observation of the traffic light, and without having made any observation at all for oncoming traffic.

■ We are not unmindful of the fact that as a general rule the trial court is in a better position to judge the testimony and arrive at a conclusion of fact therefrom than is the appellate court. However, as observed by the defense counsel, such is not the situation in the instant case since the findings on which the judgment below was based were not made by the Judge who heard the case.

For the reasons assigned the judgment herein is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of defendant rejecting plaintiffs' demands at plaintiffs costs.

LE BLANC, J., recused.